United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAWASAKI JUKOGYO KABUSHIKI KAISHA,

Plaintiff,

v.

RORZE CORPORATION, et al.,

Defendants.

Case No. 22-cv-04947-PCP

**CLAIM CONSTRUCTION ORDER**

This is a patent case involving robots used in semiconductor manufacturing. The patented invention aims to prevent robots that transfer semiconductor wafers between different pieces of manufacturing equipment from colliding with the doors of the specialized pods that transport the wafers. Plaintiff Kawasaki Jukogyo Kabushiki Kaisha (Kawasaki Heavy Industries) claims that defendants Rorze Corporation and Rorze Automation, Inc. infringe several of its patents. Kawasaki's asserted patents are U.S. Reissue Patent Nos. RE45,772; RE46,465; RE47,145; RE47,909; and RE48,031. The asserted patents are reissues of U.S. Patent No. 7,874,782, which was issued on January 25, 2011. The asserted patents were reissued between 2015 and 2020.

Kawasaki and Rorze dispute the construction of ten terms in these patents, which share a specification. After considering the claims, specifications, prosecution histories, briefing, argument, and other relevant evidence, the Court construes the terms as set forth below.

## I. Background

The following technical background is drawn from the shared specification of the patents.

Semiconductor wafers need to be kept clean and free from interference during the chip manufacturing process. The asserted patents involve robots that carry semiconductor wafers through the inside of a "wafer transfer apparatus." The inside of the apparatus is an enclosed and

atmosphere-controlled "interface space"—essentially, an airtight box. The air inside the space is kept clean using filters and other equipment. Wafers are brought to the apparatus in specialized sealed containers called "front opening unified pods" or "FOUPs." As the name suggests, FOUPS have front openings—doors that allow access to the wafers inside. The front wall of a wafer transfer apparatus has corresponding openings with doors. When a FOUP is docked to the outside of an apparatus so that the corresponding FOUP and apparatus doors line up, a "FOUP opener" opens both doors so that the robot inside the interface space can access the wafers, while maintaining a seal so outside air and dust cannot get in. A wafer carrying robot inside the interface space can then remove a wafer from the FOUP, carry it through the space, and pass it into another section of the equipment, the "processing" space. Once the wafer is processed, the robot returns the wafer through the interface space to the FOUP.

The asserted patents involve robots with movable arms that pivot around a single fixed axis. Having a single pivot axis instead of a sliding mechanism minimizes movement, which could scatter dust. The patents aim to increase the length of the robot arm while ensuring that the arm does not collide other parts of the apparatus. Figure 8 shows an example layout:

The pivot axis is labeled A0. The robot in this diagram has three arms that enable a range of movement. FOUPs are not shown, but would be located along the front (top in the diagram) of the apparatus. When the robot's arms are folded in, they stay within the rotation radius labeled R.

The challenge addressed by these patents is that both the FOUP openers and the robot arms can move within the interface space. This creates potential for collisions. The patents aim to avoid this by setting a length R that avoids collisions between the robot arms and the FOUP openers.

**II. Legal Standards**

Section 112 of the Patent Act directs that a patent specification "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains … to make and use the same," and requires that the specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112.

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (cleaned up). Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312–13. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

Courts construe the meaning of language used in patent claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). "Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips,* 415 F.3d at 1314 (cleaned up). In addition to the words, structure, and context of the claims themselves, the patent specification is "highly relevant" and is "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Courts may also look

United States District Court
Northern District of California

to the patent's prosecution history, especially to "exclude any interpretation that was disclaimed." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005). Finally, courts also have discretion to consider extrinsic evidence like dictionaries, treatises, and expert testimony. *Philips*, 415 F.3d at 1317. But extrinsic evidence is "less significant" and "less reliable" than the intrinsic record and should only be "considered in the context of the intrinsic evidence." *Id.* at 1317–19.

Under Section 112, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Determining whether a claim is indefinite requires "a delicate balance." *Id.* at 909 (cleaned up). This inquiry focuses on whole claims rather than particular terms. *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016). And it must account for "the inherent limitations of language" and the fact that "patents are not addressed to lawyers, or even to the public generally, but rather to those skilled in the relevant art." *Nautilus*, 572 U.S. at 909. Still, "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* (cleaned up). "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. Construction of Disputed Terms

Kawasaki and Rorze dispute ten terms from the asserted patents, which share a common specification. The Court adopts the parties' practice and refers to the RE772 patent unless noted. Several terms appear in both singular form and as a "plurality." Because the parties do not dispute how "plurality" affects the meaning, this order addresses only the singular terms.

### 1. "A FOUP Opener"

| | |
|---|---|
| Claim Language | "a FOUP opener" |
| Party Seeking Construction | both |

| | |
|---|---|
| Kawasaki Proposal | plain and ordinary meaning |
| Rorze Proposal | means-plus-function claim invalid under Section 112(f) |
| Court's Construction | **no further construction** |

Rorze argues that "FOUP opener" is a functional claim subject to 35 U.S.C. § 112(f) and is invalid because the specification does not adequately disclose a structure corresponding to the FOUP opener function. Kawasaki counters that "FOUP opener" is a known structure (also known as a "load port"), and that the term therefore does not require construction and should be afforded its ordinary meaning. Rorze responds that even if FOUP opener is not a functional claim, the term should be construed to mean "a device that moves the opener-side door and the FOUP-side door horizontally in the interface space between open and closed positions." Dkt. No. 80-6, at 1.

Section 112(f) allows for "functional" claiming: "An element in a claim … may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f). Applicants have a choice: " (1) recite … a function without reciting structure for performing the function and limit the claims to the structure, materials, or acts disclosed in the specification (or their equivalents), in which case § 112[(f)] applies, or (2) recite both a function and the structure for performing that function in the claim, in which case § 112[(f)] is inapplicable." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022). If Section 112(f) applies and the specification fails to provide the corresponding structure, the claim is indefinite.

Claims that do not use the word "means" are presumed not to be functional. *Dyfan*, 28 F.4th at 1365. But this presumption "can be overcome if a challenger demonstrates that the claim term fails to recite sufficiently definite structure." *Id.* (cleaned up). The "essential inquiry" is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* Intrinsic and extrinsic evidence are relevant. "[T]erms need not connote a single, specific structure" but "may instead describe a class

of structures and still recite sufficiently definite structure to not invoke § 112[(f)].” *Id.* at 1366.

“FOUP opener” is a name for structure. This term does not render the claims that use it functional. The claims that use this term do not use it in conjunction with the word “means” or an equivalent. This creates a presumption—albeit not “strong”—that the claims are not functional. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). To rebut this, Rorze needs to establish by a preponderance of evidence that a person of ordinary skill in the art would believe that “the term does not recite sufficiently definite structure.” *Dyfan*, 28 F.4th at 1366. Rorze takes issue with Kawasaki’s characterization of intrinsic and extrinsic evidence, but it does not point to other evidence of its own that would rebut the presumption that “FOUP opener” is not claimed functionally. And the evidence Kawasaki has included is compelling. For example, Kawasaki has submitted a 2005 article by Rorze Director Fumio Sakiya that uses the term “FOUP opener” generically and interchangeably with “load port.” *See* Dkt. No. 86-15.

Rorze contests Kawasaki’s characterization and argues that the article’s “main point is to highlight the different types of structures that might be used to open the doors of a FOUP—particularly the difference between Rorze’s structure … with a more conventional structure.” Dkt. No. 88, at 13. But the possibility that there could be many different types of structures captured by the term “FOUP opener” does not mean that a person of ordinary skill in the art would not have understood the term to refer to structure. Indeed, a claim term need not “denote a *specific* structure”; “[I]t is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.” *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359–60 (Fed. Cir. 2004) (emphasis added). While the range of structures that could be denoted by the term “FOUP opener” might “vary significantly and in potentially dispositive ways,” as Rorze contends, Dkt. No. 88, at 14, this potential variation does not transform the patents’ use of a well-understood term into a functional claim.

Here, as in *Dyfan*, Kawasaki’s evidence makes it “clear” that “FOUP opener” “connotes some structure to a person of ordinary skill in the art.” 28 F.4th at 1366. Because Rorze has not provided “more compelling evidence of the understanding of one of ordinary skill in the art,” “the

presumption that § 112[(f)] does not apply is determinative." *Id.* The Court therefore adopts Kawasaki's proposal: "FOUP opener" is a name for structure. No further construction is required.

**2. "An Interface Space"**

| | |
|---|---|
| Claim Language | "an interface space" |
| Party Seeking Construction | Rorze |
| Kawasaki Proposal | the volume defined by the interface space forming portion that includes the volume of the front openings of the front wall of the interface space forming portion |
| Rorze Proposal | a space between an interior face of the front wall and an interior face of the rear wall and not including the closed opener-side doors |
| Court's Construction | **the volume enclosed by the six walls of the interface space forming portion, not including the volume of any openings in those walls** |

This term is foundational to several of the other disputed terms. It appears in RE909, RE031, RE772, and RE145. Here is how the term is used in Claim 1 of RE772:

> A wafer transfer apparatus for transferring a wafer, comprising … an interface space forming portion defining an interface space, the interface space forming portion having a front wall and a rear wall which are arranged at a predetermined interval in forward and backward directions, the front wall having a front opening formed therein, and the rear wall having a rear opening formed therein.

Col. 29:66–30:6. The "interface space" is a void defined by its boundaries—the "interface space forming portion." That "portion" includes a front wall and a rear wall, both of which have openings. The dispute is whether the openings in the front wall are part of the interface space.

The language of both the claims and the specification is instructive. The specification explains that the interface space is "a rectangular parallelepiped." In geometric terms, this means a three-dimensional shape with six rectangular faces. In simple terms, a box. The specification

United States District Court
Northern District of California

further explains that the interface space is enclosed by six walls: front and rear walls, two side walls, a ceiling wall, and a bottom wall. Col. 10:19–39. The claims reinforce this understanding. In RE772, for example, Claim 1 contemplates that the interface space can have "a length B in the forward and backward direction of the interface space." Col. 30:35–36. The specification makes clear that B is the length *of* the interface space in that direction. Col. 18:35, 40. If the interface space is a simple box, it will have one length in each dimension. If, by contrast, the interface space also includes the opening in the front wall—a shape more akin to a Lego brick than a box—there would not be a single length. Claim 1 also discusses "a FOUP opener … located adjacent to the interface space *and* the front opening." Col. 30:7–9 (emphasis added). In other words, the opening in the front wall is *separate* from the interface space itself, which is a box defined by six flat rectangular surfaces. This further contradicts Kawasaki's proposed construction.

In sum, based on the language of the claims and specification, the Court construes "interface space" to mean "the volume enclosed by the six walls of the interface space forming portion, not including the volume of any openings in those walls."

**3. "The Length B"**

| | |
|---|---|
| Claim Language | "the length B corresponding to a length between the front wall and the rear wall" |
| Party Seeking Construction | Rorze |
| Kawasaki Proposal | the distance from the outside of the front wall to the inside of the rear wall in the forward and backward directions |
| Rorze Proposal | the length between an interior face of the front wall and an interior face of the rear wall |
| Court's Construction | **the forward-backward length of the interface space, measured from the interior face of the front wall to the interior face of the rear wall** |

The "length B" is closely related to the interface space. As discussed above, the claims and specification make clear that B is the length *of* the interface space in the forward-backward direction. And the interface space does not include the volume of the openings in the front wall. It follows directly that the length of the interface space in the forward-backward direction is the length between the *interior* surfaces of the front and back walls of the interface space. This is reinforced by the claim language that B is the length "between" the front and rear wall.

Kawasaki's main counterargument is premised upon Figure 1, which is one of nine diagrams included in the specification to illustrate the first preferred embodiment of the invention.

FIG. 1

Figure 1 is annotated in a way that appears to show B measured from the interior surface of the rear wall (bottom of diagram) to the *exterior* of the front wall. Kawasaki essentially argues that this annotation is enough to overcome the otherwise clear meaning of the claims and specification.

Federal regulations require a patent specification to "describe completely a specific embodiment of the process, machine, manufacture, composition of matter or improvement invented." 37 C.F.R. § 1.71. An embodiment is a "manner in which an invention can be made, used, practiced or expressed." Glossary, U.S. Patent and Trademark Office, perma.cc/H2ER-

ZRBQ. Written language and visual drawings in a specification are not themselves embodiments, but are rather *descriptions* of an embodiment. "Ordinarily drawings which accompany an application for a patent are *merely illustrative* of the principles embodied in the alleged invention claimed therein and do not define the precise proportions of elements relied upon." *In re Olson*, 212 F.2d 590, 592 (C.C.P.A. 1954) (emphasis added); *cf.*, *e.g.*, *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000) ("Under our precedent, … it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue.").

Measuring the length B between the interior surfaces of the front and back walls is consistent with the preferred embodiment identified in the specification. As the specification explains, Figure 1 is a "plan view" of a first embodiment of the invention (the specification discusses four potential embodiments). Col. 10:1–3. There are a total of nine figures that illustrate this first embodiment, as well as nearly seventeen columns of textual description. While Kawasaki is correct that Figure 1 appears to show B being measured from the exterior surface of the front wall, this would conflict with the written description of the same embodiment. For example, the specification's description of the first embodiment describes the interface space as a "rectangular parallelepiped box-like shape," Col. 12:18, and specifies that B is the length "*of* the interface space," Col. 18:35–36. Further, the text of the description suggests taking measurements based off the length B "from the rear wall" and "from the front wall," offering no indication that these measurements "from" each wall should be taken differently for the front wall versus the rear one. Col. 19:10, 13. And another drawing illustrating the same first embodiment shows no difference in how B is measured from the front versus the rear wall:



FIG. 3

Claim constructions that exclude a preferred embodiment are "rarely, if ever, correct" and "require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Here, considering *all* of the written and visual description of the first embodiment together, construing B as length from the interior face of the front wall to the interior face of the rear wall would not exclude the first embodiment. And aside from the dimension annotations, Figure 1 itself is otherwise entirely consistent with this interpretation. At most, there is a single annotation in Figure 1 that could suggest an interpretation that is otherwise at odds with the rest of the description of the first embodiment. Even if there is some internal inconsistency in the specification's description of the first embodiment, the better interpretation—and the construction most strongly supported by the text and structure of the specification and the claims themselves—is that B is measured between the front and rear walls.

Accordingly, this term is construed to mean "the forward-backward length of the interface space, measured from the interior face of the front wall to the interior face of the rear wall."

United States District Court
Northern District of California

### 4. "Measured From the Front Wall"

| | |
|---|---|
| Claim Language | "measured from the front wall in the forward and backward directions" |
| Party Seeking Construction | Rorze |
| Kawasaki Proposal | measured from the outside of the front wall in the forward and backward directions |
| Rorze Proposal | measured from an interior face of the front wall in the forward and backward directions |
| Court's Construction | **measured from the interior surface of the front wall in the forward and backward directions** |

This phrase is closely related to the "length B" and how that length is measured. The parties again dispute whether the measurement should be from the interior or exterior surface of the front wall. (The phrase "in the forward and backward directions" means the axis extending perpendicularly between the front and rear walls.)

The claim language contemplates determining a length defined by the formula B – L0 – E. B is the same length already discussed. L0 is defined as "the distance … from the rear wall of the interface space forming portion to the pivot axis" and E is defined as the "length … of a robot invasion restricted region, which is … measured from the front wall in the forward and backward directions toward the rear wall." Both L0 and E are then subtracted from the length B, which as discussed above is measured along the forward-backward axis and is the length between the *interior* surfaces of the front and rear walls.

Kawasaki's arguments for measuring the length E from the exterior surface of the front wall are the same as its arguments for measuring the length B from the exterior surface, and are rejected for the same reasons. Because B is measured from the interior surface, and E is a length measured from the same wall that must be coherently subtractable from B, it follows that E must

also be measured from the interior surface of the front wall.

The Court therefore adopts the following construction: "measured from the front wall in the forward and backward directions" means "measured from the interior surface of the front wall in the forward and backward directions."

**5. "A Robot Invasion Restricted Region"**

| | |
|---|---|
| Claim Language | "a robot invasion restricted region" |
| Party Seeking Construction | both |
| Kawasaki Proposal | a space that the robot arm in its minimum transformed state is not long enough to enter, thereby preventing interference of the robot in its minimum transformed state with the FOUP opener(s) and the front wall |
| Rorze Proposal | a region extending horizontally [i.e., along the forward-backward axis] into the interface space beyond the closed opener-side door into which the opener-side door and FOUP-side door move horizontally when opening |
| Court's Construction | **the region extending the distance E in the forward-backward direction measured from the interior surface of the front wall, where E is the farthest distance any part of the FOUP opener mechanism extends into the interface space (including while moving).** |

Having established the meaning of several related terms, the Court can consider the phrase "robot invasion restricted region," which is central to the parties' claims and dispute. This phrase appears in all of the asserted independent claims. And, while the same phrase is used, the context in which it appears varies from patent to patent. The specification includes the following discussion of the robot invasion restricted region in its summary of invention section:

> Preferably, the minimum rotation radius R [the distance from the pivot axis to the farthest away portion of the robot arm when the arm

    > is in its minimum transformed state] is set to be equal to or less than an allowable length (B – L0 – E) to be obtained by subtracting the distance L0 in the forward and backward directions from the rear wall of the interface space forming portion to the pivot axis and a length E of a robot invasion restricted region, which is set for the FOUP opener and is measured from the front wall in the forward and backward directions toward the rear wall, from the length B in the forward and backward directions of the interface space (i.e., R ≤ B – L0 – E).
>
> According to this invention, by setting the minimum rotation radius R to be equal to or less than the allowable length (B – L0 – E), even in the case where the robot arm approaches nearest relative to the front wall, entering of any portion of the robot arm into a movable region of the FOUP opener can be prevented. Therefore, interference of the robot arm with the FOUP opener can be prevented, regardless of the movable region or state of the FOUP opener.

'782 Patent, Col. 5. The "robot invasion restricted region," whose length is E, is discussed in varying language in the claims of the asserted patents:

| | |
|---|---|
| RE909, Claim 15 | a length E of a robot invasion restricted region, which is set for the FOUP opener and is measured from the front wall in the forward and backward directions toward the rear wall |
| RE465, Claim 15 | a length E of a robot invasion restricted region, which is determined by the FOUP opener and is measured from the front wall in the forward and backward directions toward the rear wall |
| RE031, Claim 15 | a length E of a robot invasion restricted region …<br><br>the robot invasion restricted region is set for the FOUP opener, extends in the forward and backward directions, and is defined by a movable region in which the opener-side door and the FOUP-side door move relative to the substrate container |
| RE772, Claim 1 | a length E of a robot invasion restricted region, which is set for the FOUP opener and is measured from the front wall in the forward and backward directions toward the rear wall …<br><br>wherein the robot invasion restricted region is defined by a distance which the FOUP opener moves in the forward and backward directions of the interface space |

| | |
|---|---|
| RE145, Claim 15 | a length E of a robot invasion restricted region, which is set for the FOUP opener and is measured from the front wall in the forward and backward directions toward the rear wall<br><br>the robot invasion restricted region is defined by a distance which the FOUP opener moves in the forward and backward directions of the interface space |

The parties agree that this term has the same meaning across all of the asserted patents despite the variation in the claim language. The Court must therefore distil the varying language into a single construction. There are several throughlines. First, the robot invasion restricted region can be defined by one variable: its length E. Moreover, this length E is measured along the forward-backward axis, and can be subtracted from B, the length of the entire interface space along that same axis. And, as discussed previously, this length is measured from the interior surface of the front wall. This means the length E is a forward-backward distance measured from the interior surface of the front wall. In other words, the length E of the robot invasion restricted region sets a buffer distance from the interior surface of the wall.

That leaves the question of how to calculate E. The claims vary in their definitions, but they all emphasize that E is closely related to the FOUP opener. E is either "set for" or "determined by" the FOUP opener. Some of the claims also specify *how* E is defined: "by a distance which the FOUP opener moves in the forward and backward directions of the interface space," or "by a movable region in which the opener-side door and the FOUP-side door move relative to the substrate container." The measure of E that best captures all of these definitions is the farthest distance (along the forward-backward axis) that any part of the FOUP opener and/or doors extend into the interface space while moving, measured from the interior of the front wall.

Accordingly, "robot invasion restricted region" is construed to mean "the region extending the distance E in the forward-backward direction measured from the interior surface of the front wall, where E is the farthest distance any part of the FOUP opener mechanism extends into the interface space (including while moving)."

United States District Court
Northern District of California

**6. "Movement of the FOUP Opener"**

| | |
|---|---|
| Claim Language | "movement of the FOUP opener during such opening and closing defining a robot invasion restricted region extending in the forward and backward directions" |
| Party Seeking Construction | Rorze |
| Kawasaki Proposal | plain and ordinary meaning |
| Rorze Proposal | movement of the opener-side door and the FOUP-side door horizontally in the interface space between open and closed positions |
| Court's Construction | **no further construction** |

Rorze seeks construction of this term, which appears only in RE145. Rorze's proposal modifies the claim in several ways. First, it refers to the movement of the opener- and FOUP-side *doors* in particular, rather than to the FOUP opener in general. Second, it limits the language to *horizontal* movement (i.e., movement along the forward-backward axis). But Rorze's proposal does not appear to be any clearer than the existing language. The Court has already determined that "FOUP opener" is clear on its own as a name for structure and requires no further construction. This phrase similarly requires no additional construction.

**7. "Minimum Transformed State"**

| | |
|---|---|
| Claim Language | "wherein, in a minimum transformed state where the robot arm is transformed such that a distance defined from the pivot axis to an arm portion which is farthest in a radial direction relative to the pivot axis is minimum" |
| Party Seeking Construction | Kawasaki |

| | |
|---|---|
| Kawasaki Proposal | ordinary meaning |
| Rorze Proposal | invalid under Section 112(f), alternatively, ordinary meaning |
| Court's Construction | **no further construction** |

The parties do not dispute the proper construction of this term. But Rorze included this term in the invalidity contentions it shared with Kawasaki in March 2023 as required by the local patent rules. This was one of twenty-three terms or limitations Rorze argues are invalid under Section 112 for lack of written description and enablement. *See* Dkt. No. 103-5, at 106–07. Kawasaki then requested construction of this term. In the joint claim construction statement, Rorze again asserts that the term is invalid under Section 112 for lack of written description and enablement, and Kawasaki states that it seeks construction because Rorze has claimed invalidity. In its brief, Rorze states that it believes the validity questions can be addressed at the summary judgment stage.

"The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Here, the parties do not dispute the meaning or scope of this term. Instead, the dispute is whether the claims using this term satisfy Section 112's enablement and written description requirements. "Enablement is a legal question based on underlying factual determinations." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015). And enablement is primarily concerned with the sufficiency of a patent's *specification*, not simply the language of the claims. *See* 35 U.S.C. § 112. In other words, the parties are not seeking construction of this term. Instead, addressing the enablement and written description arguments would require granting summary judgment as to some (but not all) of Rorze's invalidity arguments at this relatively early stage in this litigation. Because the parties do not clearly agree that such an early determination would be appropriate, the Court will not resolve the parties' invalidity contentions at this stage. And as the parties agree, this term requires no further construction.

**8. "Plurality of Link Members"**

| | |
|---|---|
| Claim Language | "the robot arm including a plurality of link members connected with one another in succession in a direction from the proximal end to the distal end" |
| Party Seeking Construction | Kawasaki |
| Kawasaki Proposal | plain and ordinary meaning |
| Rorze Proposal | invalid under Section 112(a), or alternatively, ordinary meaning |
| Court's Construction | **no further construction** |

Here, too, the parties do not dispute the meaning of this term, but instead disagree about whether it is invalid. The Court will similarly adopt no further construction of this term at this stage. The parties may resolve their invalidity arguments in conjunction with a dispositive motion.

**9. "Wafer Container" and "Substrate Container"**

| | |
|---|---|
| Claim Language | "a wafer container" and "a substrate container" |
| Party Seeking Construction | Rorze |
| Kawasaki Proposal | "FOUP" |
| Rorze Proposal | invalid, or alternatively, ordinary meaning |
| Court's Construction | **FOUP** |

Rorze argues that the phrases "wafer container" and "substrate container" are invalid under Section 112(a). Rorze alternatively argues that the terms should have their ordinary meaning (but

reserves the right to challenge the claims including these terms on indefiniteness grounds later on). Kawasaki proposes that both phrases be construed as meaning "FOUP."

As before, the Court will not address the invalidity contentions at this stage. But here, the parties do propose competing constructions of these terms.

The common specification explains that semiconductor wafers are "contained in each front opening unified pod (FOUP) serving as a substrate container." Col. 1:41–44. The claim language is even clearer in suggesting that "wafer container" and "substrate container" are used interchangeably with FOUP. Claim 15 of RE909 discusses, for example, "a FOUP opener configured to open and close the substrate container." Col. 36:25–26. RE145 similarly mentions "a FOUP opener configured to open and close a wafer container." Col. 36:45–46. The language and structure of these claims demonstrate that "wafer container" and "substrate container" simply mean "FOUP." Both terms are therefore construed as meaning "FOUP."

## IV. Conclusion

The ten terms identified by the parties are construed as set forth above.

**IT IS SO ORDERED.**

Dated: April 29, 2024

P. Casey Pitts
United States District Judge