UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWASAKI JUKOGYO KABUSHIKI KAISHA,<br><br>Plaintiff,<br><br>v.<br><br>RORZE CORPORATION, et al.,<br><br>Defendants. | Case No. 22-cv-04947-PCP<br><br>**ORDER GRANTING IN PART KAWASAKI'S MOTION TO STRIKE, GRANTING IN PART RORZE'S MOTION TO EXCLUDE, GRANTING SEALING MOTIONS**<br><br>Re: Dkt. Nos. 211, 251, 252, 257, 258 |

This order addresses motions related to the opinions and reports of two expert witnesses. Plaintiff Kawasaki moves to strike portions of expert Christian Tregillis's report and defendant Rorze seeks to exclude expert David Haas's testimony. For the reasons stated herein, the Court grants in part and denies in part both motions, and grants the related sealing motions.

**I.    Kawasaki's motion to strike portions of Christian Tregillis's expert report is granted in part.**

Two months following the close of expert discovery in this case, Rorze served a supplemental report from its damages expert, Christian Tregillis. In his initial report, Mr. Tregillis calculated reasonable royalty damages in reference to Schedule 3 of his report, which details the operating profit rates for robots. He maintains that royalty damages should have instead been calculated in reference to operating profits for the accused Equipment Front End Modules (EFEMs), the figures for which are detailed in Schedule 4, and his supplemental report updates his calculations accordingly. Rorze argues that the supplementation merely corrects a "clerical error" and is thus appropriate under of Federal Rule 26(e), which recognizes a party's "duty to supplement" information in an expert report later found to be incomplete or erroneous. Fed. R. Civ. P. 26(e)(2); *see also* Fed. R. Civ. P. 26(e)(1)(A).

Kawasaki counters that the new report goes beyond a Rule 26(e)(2) supplementation and constitutes a new opinion altogether. Specifically, Kawasaki takes issue with two portions of the report: Mr. Tregillis's opinions (1) that operating profits act as a "cap" on royalties, and (2) that there are years in which Kawasaki is entitled to no reasonable royalty because Rorze made no operating profits that year.[1]

As an initial matter, Mr. Tregillis may update his report to reference Schedule 4 rather than Schedule 3. The Court agrees that updates to Schedule 12 of his report to reflect EFEM profit rather than robot profit lies within the scope of Rule 26(e). Mr. Tregillis did highlight this error to Kawasaki during his deposition. He also provided a seemingly routine update to Section 2.1 of his report by correcting Schedules 1.1 and 1.2—updates to which Kawasaki did not object. Mr. Tregillis may correct Schedule 12 in a similar manner.

Conversely, Mr. Tregillis may not offer opinions about the effect of his correction on any hypothetical negotiations between the parties. Rule 26(e) imposes a duty on parties to supplement incomplete or incorrect expert reports; it does not, however, "create a loophole through which a party" can offer entirely new expert opinions "to [its] advantage after the court's deadline for doing so has passed." *Luke v. Family Care and Urgent Meds. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009).

That Rorze's supplementation goes beyond a mere Rule 26(e) supplementation is demonstrated by the additional text Mr. Tregillis provided in his supplemental report. Unlike his updates to section 2.1, Mr. Tregillis provided seven paragraphs of new, explanatory text to accompany his updates to schedule 12. *See* Dkt. No. 251-2, at 6–8, ¶¶10–16. To be sure, some of this text simply describes the corrections he made to schedule 12. But these paragraphs also explicitly discuss applying "a cap" on royalty payments because such royalties "cannot exceed … operating profits." And as a corollary to that, Mr. Tregillis opines in paragraph 14 that Rorze's

---

[1] Kawasaki also objected to Mr. Tregillis's opinion that the proposed royalty offered by Kawasaki's expert, Mr. Haas, acts as a cap if operating profits exceed Mr. Haas's proposed royalty. Rorze has withdrawn this portion of Mr. Tregillis's report, so Kawasaki's motion is moot as to that opinion.

2

lack of operating profits in certain years means that Kawasaki should not receive any royalty in certain years. Mr. Tregillis did not disclose these opinions in his original report and, because he supplemented that report after the close of expert discovery, Kawasaki was unable to depose him about these opinions.

Kawasaki's motion is therefore granted in part. Mr. Tregillis may update schedule 12 of his report to reflect its reliance on schedule 4 rather than schedule 3. But Mr. Tregillis may not offer opinions about the effect of that change on any hypothetical negotiations between the parties.

In connection with this motion the parties sought to file material related to Rorze's confidential business information under seal. The Court concludes that at this stage there is good cause to support sealing this information and therefore grants the parties' sealing motions. *See* Dkt. Nos. 251, 257, 258.

**II.     Rorze's motion to exclude the testimony of expert David Haas is granted in part.**

Rorze moves to exclude five of Mr. Haas's opinions regarding (1) damages related to foreign sales, (2) damages incurred before notice, (3) lost profits damages, (4) reasonable royalty damages, and (5) commercial success. The Court grants in part Rorze's motion and excludes Mr. Haas's testimony regarding damages incurred before notice. The Court otherwise denies Rorze's motion.

**A.     Mr. Haas may testify about damages incurred from foreign sales of the accused products.**

Mr. Haas's damages calculations include all Rorze's sales of the accused products, including sales related to products allegedly manufactured, shipped, and delivered outside of the United States. Rorze objects to Mr. Haas's damages calculations because the federal patent statutes allow a patentee to recover damages for patent infringement only from another party who "makes, uses, offers to sell, or sells any patented invention, *within the United States*[.]" 35 U.S.C. § 271(a) (emphasis added); *see also* 35 U.S.C. § 284. Because a party cannot recover damages for patent infringement "when a patented product is made and sold in another country," *Microsoft Corp. v. AT&T Corp.*, 590 U.S. 437, 441 (2007), Rorze argues that Mr. Haas's opinion is the product of an unreliable application of his methodologies to the facts of this case and should be

excluded under Federal Rule of Evidence 702.

The problem with this argument is that whether Rorze is ultimately liable to Kawasaki for products sold and manufactured oversees is a question of liability, not expert opinion. Courts regularly consider whether patent infringement extends to overseas sales at summary judgment. *See, e.g.*, *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1022-23 (N.D. Cal. 2019) (recognizing the "fact-intensive nature" of the foreign sales inquiry); *Ziptronix, Inc. v. Omnivision Techs., INc.*, 71 F. Supp. 3d 1090, 1096 (N.D. Cal. 2014) (characterizing foreign sales as matter of "infringement liability"); *see also Metaswitch Networks Ltd. v. Genband US LLC*, 2016 WL 874737, at *4 (E.D. Tex. Mar. 5, 2016) (distinguishing disputes of fact from expert reliability). The Court's standing order limits parties to one 25-page summary judgment motion unless otherwise granted leave.[2] Rorze did not raise this argument in its motion for summary judgment and doing so as a matter of Rule 702 motion runs contrary to the Court's standing order. A standing order's page limit requirement serve the dual purposes of encouraging parties to present only their strongest legal arguments and ensuring that the Court affords each party roughly equal attention in considering those arguments.[3] The Court therefore denies Rorze's motion on this basis.

But even had Rorze properly raised this argument on summary judgment, the Court would have denied the motion because it turns on a dispute of material fact. Rorze is correct that it cannot be held liable for any foreign sales of infringing products. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007) ("[N]o infringement occurs when a patented product is made and sold in another country."). Courts also apply a presumption against extraterritoriality when applying that rule. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1311 (Fed. Cir.

---

[2] The Court's Civil Standing order also limits the parties to two briefs each when filing cross-motions for summary judgment. The parties in this case did not comply with that directive and instead each filed three briefs. Although the Court declined to admonish the parties for this oversight, it makes clear that Rorze had ample space in which to raise its foreign sales argument when moving for summary judgment.

[3] When Rorze moved for summary judgment, it also filed a separate, stand-alone, 20-page motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Like this motion, Rorze's Rule 12(c) motion relied on arguments that could also have been presented in its motion for summary judgment.

4

1  2015). But the Federal Circuit has held that there is no "single, universally applicable fact that
2  determines" whether a sale is foreign or domestic for the purposes of infringement liability. *Id.* at
3  1308. Courts may consider the places of sale, delivery, "of inking the legal commitment," and
4  "where other 'substantial activities of the sales transactions' occurred." *Id.* (citations omitted).
5  Neither party disputes that many of the infringing products were manufactured and delivered
6  abroad. But the parties also do not dispute that significant governing portions of the relevant
7  contracts were formed in the United States. Those contracts are governed by California law and
8  require that all sales be made through domestic ordering system. Rorze allegedly communicates
9  and negotiates major sales of the accused products with its client's U.S.-based sales team. On this
10 evidence, the Court could not conclude as a matter of law that a jury would find that the accused
11 products were sold abroad. This dispute of material fact provides an independent basis for the
12 Court's denial of Rorze's motion.

### B. Mr. Haas may not testify about damages incurred before notice.

14 Rorze next objects to a portion of Mr. Haas's report in which he opines that Kawasaki is
15 entitled to recover damages as early as six years before filing this suit. In Rorze's view, the
16 damages period is limited by the statutory requirement that a patentee cannot recover damages
17 before providing the alleged infringer with actual notice of the alleged infringement unless the
18 patentee has marked its patent number on its patented products. Although Kawasaki does not itself
19 make one of the products covered by a patent in suit, third-party AMAT sells products that include
20 Kawasaki's robots. Kawasaki's damages contentions provide no evidence of marking, and
21 Kawasaki did not notify Rorze of the alleged infringement until June 14, 2017.

22 Pursuant to 28 U.S.C. § 287(a), a patentee cannot recover damages for patent infringement
23 unless the patentee either marked those goods or notified infringers of its patent. "The patentee
24 bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."
25 *Arctic Cat Inc. v. Bombardier Recreational Prods Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017)
26 (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996)). The marking requirement
27 extends to all "persons making or selling any patented article for or under [the patentee]." *Id.*
28 (citations omitted). Thus, where a third-party makes or sells the patented article, the patentee must

1  demonstrate that it "made reasonable efforts to ensure [the third party's] compliance with the
2  marking requirements." *Id.* (citations omitted).
3        Kawasaki argues that there is a dispute of fact as to whether AMAT's EFEMs are covered
4  by the patents in suit. Although the parties disagree as to the scope of the asserted patents, it is
5  incorrect to characterize this as a "dispute of fact," because Kawasaki asserts that the AMAT
6  products *are* covered. Given this litigation position, it is Kawasaki's burden to demonstrate that it
7  made "reasonable efforts to ensure [AMAT's] compliance with the marking requirements" of the
8  patent statute. *Id.* Kawasaki cannot allege that AMAT robots are covered by the patents-in-suit
9  while simultaneously disclaiming any obligation to undertake a good-faith effort to ensure the
10 marking of those products merely because Rorze has a different view of the scope of the asserted
11 patents. And Kawasaki has pointed to no evidence of such efforts. The Court therefore agrees with
12 Rorze that Mr. Haas cannot testify about damages incurred prior to the date on which Kawasaki
13 provided Rorze with actual notice.

### C. Mr. Haas may testify about damages related to lost profits.

15       Rorze next moves to exclude a section Mr. Haas's report that details his opinion as to lost
16 profit damages. Specifically, Rorze argues that Mr. Haas fails to reliably apply the *Panduit* factors
17 in his calculation of lost profits.[4] Rorze points to four deficiencies in Mr. Haas's opinion, none of
18 which undermine the ultimate reliability of his report.
19       First, Rorze argues that Mr. Haas failed to address evidence of non-infringing alternatives.
20 To demonstrate an entitlement to lost profits, Kawasaki must ultimately prove that there were no
21 non-infringing alternatives to which Rorze could have turned to capture sales. *See Panduit Corp.*
22 *v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). It is therefore Kawasaki's
23 burden to demonstrate an absence of non-infringing alternatives. In Rorze's view, Mr. Haas's

---

[4] "One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017) (citation omitted). Those factors include: "(1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made." *Id.* at 1285 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).

United States District Court
Northern District of California

1  report relies solely on an argument that Rorze has failed to show any evidence of non-infringing
2  alternatives. But that is not fatal to Mr. Haas's report because Rorze's critique is more relevant to
3  Kawasaki's ultimate burden of proof than it is to the reliability of Mr. Haas's opinion. To be
4  certain, Kawasaki cannot prevail under the second *Panduit* factor by relying solely on Rorze's
5  evidentiary shortcomings. But Mr. Haas's opinion is only one piece of Kawasaki's case-in-chief.
6  Kawasaki acknowledged as much by stating in its response brief that it plans to meet its burden
7  through additional documents, fact testimony, and expert testimony.[5] Rorze confuses the burden of
8  proof with a question of evidentiary reliability.

9        Second, Rorze argues that Mr. Haas offers no support for his opinion that Kawasaki had
10  capacity to exploit demand. In essence, Rorze takes issue with the fact that Mr. Haas's report
11  relies extensively on discussions with Kawasaki employees as well as the depositions of those
12  employees. Based on these sources, Mr. Haas seeks to opine that had Rorze not infringed
13  Kawasaki would have had the manufacturing and marketing capacity to sell additional robots.

14        Experts can rely on inadmissible hearsay if "experts in the particular field would
15  reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid.
16  703. This is not a problem if the expert is "applying his training and experience to the sources
17  before him and reaching an independent judgment" instead of "acting as a transmitter for …
18  hearsay." *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013); *see also Erhart v. Bofl*
19  *Holding, Inc.*, 445 F. Supp. 3d 831, 839 (9th Cir. 2020). Mr. Haas's reliance upon discussions with
20  and depositions of these Kawasaki employees is not improper. Mr. Tanami is a senior Kawasaki
21  employee and has been with the company for three decades. And although Mr. Haas's report does
22  rely extensively on Mr. Tanami in forming his opinions, the conclusions of his report remain
23  within his field of expertise. While Rorze may be concerned that Mr. Haas took Mr. Tanami's
24  word "at face value," that is a basis for Rorze to undermine Mr. Haas's testimony on cross
25  examination, not a basis for striking it altogether. And in any event, Mr. Haas's report goes

---

[5] If Rorze believes that Kawasaki cannot meet its burden of production as to lost profits, that too is an argument that should have been raised on summary judgment.

7

beyond mere verbatim repetition of his conversations with Mr. Tanami. If Rorze believes that Mr. Haas is merely parroting the testimony of an out-of-court declarant, it retains the right to raise hearsay objections at trial.

Third, Rorze argues that Mr. Haas's market analysis failed to consider evidence of competition for AMAT sales. Rorze specifically points to an internal Kawasaki document that refers to a supposed 70 percent cap AMAT applies to Kawasaki's share of its product supply. The parties did not provide the Court with documentation of this limit beyond the reference in Kawasaki's internal documents, and Rorze did not provide any evidence that AMAT implemented this practice. This document therefore does not render Mr. Haas's testimony unreliable for Rule 702 purposes. It simply gives Rorze grounds to impeach his analysis on cross examination.

Finally, Rorze argues that Mr. Haas lacks support for the opinion that that Kawasaki would not have incurred incremental costs had it sold an additional 4,700 robots during the damages period, because it is not based on sufficient facts or data. To the contrary, Mr. Haas's opinion is based upon his conversations with four senior Kawasaki employees. These employees work in Kawasaki's robotics, administrative, and financial divisions and are well-positioned to understand the financial impacts entailed in an expansion of Kawasaki's production capacity. It was proper for Mr. Haas to rely upon conversations with these employees.[6] Rorze's motion spends much space fighting Mr. Haas's conclusions and seeking to demonstrate why those conclusions are not credible. Those arguments should be presented to the jury. Rule 702 is concerned with the reliability of expert testimony, not whether the finder of fact will be convinced by that testimony.

For these reasons, Mr. Haas may testify about lost profits.

**D.    Mr. Haas may testify about reasonable royalty damages.**

Rorze moves to exclude Mr. Haas's analysis of the reasonable royalty damages to which Kawasaki would be entitled if it prevails. The testimony to which Rorze objects relates to Mr.

---

[6] Rorze notes that Kawasaki failed to disclose these employees and that it therefore did not depose them. But it is not surprising that Kawasaki did not know, more than a year before the expert report disclosure deadline, which employees would speak with Mr. Haas. If Rorze believed that deposing these witnesses was necessary after receiving Mr. Haas's report, the proper recourse would have been to seek leave to reopen fact discovery for that limited purpose.

Haas's description of the parties' respective positions in the hypothetical negotiation of a reasonable royalty rate. Rorze raises two arguments, neither of which is availing.

First, Rorze argues that Mr. Haas's failure to account for the different dates on which the asserted patents issued renders his royalty calculations unreliable. To be sure, the "correct determination of the hypothetical negotiation date is essential for properly assessing damages." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) (cleaned up and citations omitted). In Rorze's view, Mr. Haas's analysis should include different calculations for every year in which each patent in this case issued.

The problem with this argument is twofold. On the one hand, all the asserted patents in this case are reissues of the '782 patent. Mr. Haas explains that in his experience, it is common to license all related patents—including later reissues—as one single bundle. Indeed, the purpose of the hypothetical negotiation is to ask, "if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?" *Id.* at 76. Mr. Haas explains that on the eve of infringement, Kawasaki would have negotiated with the entire patent bundle in mind. On the other hand, Mr. Haas also explains in his reply report that his calculations would be the same had he completed them in each reissue year: 2017, 2018, or 2020. Rorze's argument is therefore insufficient to undermine the reliability of Mr. Haas's analysis.

Second, Rorze argues that Mr. Haas's methodology in establishing a $10,000 licensing figure is arbitrary because it fails to identify a numerical starting point from which he adjusts upwards or downwards based on the factors outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Every "reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009). Mr. Haas's analysis spans 27 pages. It is thorough, includes a discussion of every *Georgia-Pacific* factor, and is based upon an extensive review of documents and testimony relevant to this case.

That Mr. Haas did not pull some arbitrary number out of thin air for an analytical starting point does not render it unreliable. Rorze relies on a single district court opinion for this

9

proposition. *See Open Text S.A. v. Box, Inc.*, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015). In that case, the district court excluded an expert's damages opinion because the expert failed to select "any starting point at all—even an arbitrary one" from which to apply the *Georga-Pacific* factors. *Id.* at *6. But the *Open Text* court arrived at that conclusion after an extensive discussion about how the expert report failed to establish any link between the factors in the expert report and the reports final royalty calculation. *Id.* at *5-6. That essentially rendered the report a "black box into which data is fed at one end and from which an answer emerges at the other." *Id.* (citation omitted). The court recognized that that "the Federal Circuit's precedents leave room for 'more than one reliable method for estimating a reasonable royalty.'" *Id.* at *5 (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). Indeed, the Federal Circuit has explained that an expert opinion need only include "some explanation of both why and generally to what extent the particular [*Georgia-Pacific*] factor impacts the royalty calculation." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012). So the simple fact that Mr. Haas did not explicitly select a single starting point from which to apply the *Georgia-Pacific* factors is not dispositive of his opinion's reliability.

More to the point, Mr. Haas's analysis is not an arbitrary or conclusory application of the *Georgia-Pacific* factors. Even assuming that Rorze is correct that Mr. Haas needs to select some starting point for his analysis, his calculations are premised upon two concrete starting points: Kawasaki's predicted lost profits and Rorze's expected profits. Rorze does not explain why he should have to select one of those over the other, rather than using the two in combination as his starting point. The wisdom of his choice may be a topic for cross examination but does not render his report unreliable. And Mr. Haas includes an extensive discussion about the *Georgia-Pacific* factors most relevant to his analysis. Indeed, he provides particularly in-depth analysis of factors 5, 6, 8, 9 and 10, 11, 13, 15, and explains clearly how each of those factors would impact a hypothetical negotiation between Rorze and Kawasaki. At this stage, that is sufficient to render his report both reliable and helpful to a jury. *See Whitserve*, 694 F.3d at 31 ("Expert witnesses should concentrate on *fully* analyzing the *applicable* factors, not cursorily reciting all fifteen. And, while mathematical precision is not required, some explanation of both why and generally to what extent

the particular factor impacts the royalty calculation is needed.") (emphasis in original).

Mr. Haas may therefore testify about reasonable royalty damages.

### E. Mr. Haas may testify about commercial success.

Rorze finally seeks to exclude Mr. Haas's opinions related to commercial success. The thrust of Rorze's argument is that Mr. Haas's opinion is overly reliant on the opinions of Kawasaki's technical expert Dr. Glew and therefore outside his area of expertise.

Rorze again relies on a single district court opinion to make its argument. In *Gamevice, Inc. v. Nintendo Co., Ltd.*, 2020 WL 13739193, at *12-13 (N.D. Cal. June 4, 2020), the district court excluded a technical portion of an economist's report. Although the court noted that the excluded section was outside of the expert's area of expertise, the court did not hold that it was error for one expert to rely upon the opinion of another. Instead, the court excluded the technical portions of the economist's report because the underlying technical opinions on which the economist relied were themselves unreliable and contrary to the facts of the case. Rorze does not provide any clear argument as to why Dr. Glew's underlying opinions are unreliable. *Gamevice* is therefore inapposite.

In any event, "experts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014). Mr. Haas's reliance on the opinion of Dr. Glew does not render his testimony unreliable. *See id.* ("Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field when evaluating design around options or valuing the importance of the specific, infringing features in a complex device.").

Mr. Haas may therefore testify as to commercial success.

### CONCLUSION

Kawasaki's motion is granted in part. Mr. Tregillis may update schedule 12 of his report but may not offer opinions about the effect of that change on any hypothetical negotiations between the parties. Rorze's motion is also granted in part. Mr. Haas may not testify about damages incurred prior to the date on which Kawasaki provided Rorze with actual notice of infringement. Rorze's motion is otherwise denied. The pending sealing motions relating to these

two motions are granted in full.

**IT IS SO ORDERED.**

Dated: July 3, 2025

P. Casey Pitts
United States District Judge